UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS A. TRIPICCHIO and <br> DENISE R. TRIPICCHIO, <br><br> Plaintiffs, <br><br> v. <br><br> SETERUS, INC., a Delaware <br> corporation, and <br> CODILIS AND ASSOCIATES, P.C., <br> an Illinois corporation, <br><br> Defendants. | Case No. 16-cv-4967 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs, Thomas A. Tripicchio and Denise R. Tripicchio, brought this action against defendants Seterus, Inc. ("Seterus") and Codilis and Associations, P.C. ("Codilis"). The Tripicchios allege that Seterus breached its contract with the Tripicchios, violated 12 C.F.R §1024.41(g), and violated the Illinois Fraud Act and that Codilis violated the Fair Debt Collection Practices Act. Seterus and Codilis both move to dismiss the claims against them for failure to state a claim on which relief can be granted. For the reasons set forth herein, both Seterus' motion to dismiss [17] and Codilis' motion to dismiss [8] are granted.

**Background**

The following facts are taken from the complaint and its attachments and are accepted as true for the purpose of the present motion. The Tripicchios owned a home in Lake Zurich, Illinois, which secured a mortgage held by Bank of America. In 2014, Bank of America initiated foreclosure proceedings against the Tripicchios and a judgment of foreclosure was entered. On December 1, 2015, Seterus took over the servicing of the Tripicchios' loan.

1

The Tripicchios submitted a complete loss mitigation application to Seterus. Seterus subsequently approved the Tripicchios to enter a trial period plan ("TPP"). Under the TPP, the Tripicchios were to make three monthly payments of a modified amount, after which they would receive a permanent loan modification. The TPP also provided that Seterus would not proceed with the foreclosure sale as long as the Tripicchios were in compliance with the terms of the TPP. In order to accept the trial offer, the TPP required that the Tripicchios:

> [S]end [Seterus] the first 'trial period payment,' by the Due Date . . . To qualify for a permanent modification, you must make the remainder of the trial period payments on time and as indicated and maintain eligibility. Payment amounts shown do not include your PMI [private mortgage insurance] premium of $145.98, which you must pay in addition to each trial payment.

(Dkt. 1-1). The TPP provided that the Tripicchios were required to make monthly payments of $3,237.96 on February 1, 2016, March 1, 2016, and April 1, 2016.

The evidence attached to the complaint shows that the Tripicchios made three payments of $3,237.96. The first payment was signed on February 23, 2016 and received on February 26, 2016. The second payment was received on March 30, 2016. The third payment was signed on April 27, 2016, and received on April 28, 2016. Seterus accepted all three of these payments.

On April 25, 2016, Codilis filed a Notice of Sherriff's Sale of Real Estate in the state court foreclosure case. Codilis filed this notice at Seterus' direction, although Bank of America remained the nominal plaintiff in the state court action. The Tripicchios subsequently filed this action against Seterus and Codilis.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon

which it rests and must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 1973, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d. 742, 751-52 (7th Cir. 2011). In other words, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-lawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), see also Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. Of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

*Breach of Contract*

In order to state a claim for breach of contract under Illinois law, the Tripicchios must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.,* 801 F.3d 777, 786 (7th Cir. 2015).

Here, the parties agree that the TPP was a valid and enforceable contract. Seterus, however, contends that the Tripicchios' complaint does not allege substantial performance because the evidence attached to the complaint shows that the Tripicchios did not make their monthly payments on time and failed to make their PMI payments.

The TPP expressly stated that "[i]n addition to the Trial Period Plan payments, you must pay your regularly scheduled PMI payment of $145.98 to remain contractually current with the conditions of your mortgage loan." (Dkt.1-1) (emphasis removed). The TPP later reiterated that "Payment amounts shown do not include your PMI [private mortgage insurance] premium of

3

$145.98, which you must pay in addition to each trial payment." (Dkt. 1-1). Although the Tripicchios attached proof of their monthly TPP payments to their complaint, they did not specifically allege or provide any proof that they made their monthly PMI payments. Seterus therefore contends that the Tripicchios breached the TPP by failing to make their PMI payments. The Tripicchios complaint, however, alleges that they "performed all obligations of the New TPP." Because at this stage in the proceedings this Court is required to credit this allegation absent allegations or evidence to the contrary, this Court must assume that the Tripicchios made the required PMI payments.

Seterus also contends that the Tripicchios breached the TPP by failing to make timely payments. The TPP states:

> To accept this trial offer, send us the first "trial period payment," by the Due Date, as shown in the following table. To qualify for a permanent modification, you must make the remainder of the trial period payments on time and as indicated and maintain eligibility.

(Dkt. 1-1). According to the TPP, the Tripicchios' three TPP payments were due on February 1, 2016, March 1, 2016, and April 1, 2016. A separate portion of the TPP, however, provided that "[e]ach trial payment must be received by us in the month in which it is due, or you will no longer be eligible for a loan modification, and your loan will not be modified." (Dkt. 1-1). The Tripicchios therefore contend that their payments, which Seterus allegedly received on February 27, 2016, March 31, 2016, and April 29, 2016, were all timely under the TPP.

The TPP, as this Court reads it, contains two sets of deadlines. The first provides when payments must be paid ("on time and as indicated") in order to maintain eligibility for a loan modification. The second set of deadlines provides that a loan payment more than a month overdue automatically destroys eligibility for a loan modification. Presumably, if a payment is paid after the due date but less than a month late, it falls to the servicer's discretion whether or not to treat it as a

4

violation of the trial period plan. Although the Tripicchios read these provisions as conflicting, this Court does not. But even if these provisions are ambiguous, one deadline in the TPP is not. The TPP expressly states that the first trial period plan payment must be sent by the *due date* of 2/1/2016. The evidence that the Tripicchios attached to their complaint clearly establishes that this was not the case. Accordingly, the Tripicchios did not substantially perform under the contract.

The Tripicchios also allege that Seterus breached the covenant of good faith and fair dealing by accepting the Tripicchios' payments while proceeding with the foreclosure sale. Under Illinois law, every contract has an implied covenant of good faith and fair dealing, which is taken into consideration when interpreting ambiguous contractual language or evaluating discretionary conduct pursuant to a contract. *Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418, 424, 248 Ill.App.3d 105 (1993). But the Tripicchios' response to Seterus' motion does not address the covenant of good faith and fair dealing or offer any argument supporting its application here. Accordingly, that contention is waived. *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) (Castillo, J.) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim.").

*12 C.F.R. § 1024.41(g)*

Count II of the Tripicchios' complaint alleges that Seterus violated 12 C.F.R. § 1024.41(g) by moving for a foreclosure sale despite the fact that the Tripicchios were performing under the TPP.

12 C.F.R.§ 1024.41(g) provides:

> Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-juridical foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for a foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

5

> 1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> 2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> 3) The borrower fails to perform under an agreement on a loss mitigation option.

As an initial matter, this Court notes that the Tripicchios have failed to establish how issuing a notice of sale constitutes either "mov[ing] for a foreclosure judgment" or "conduct[ing] a foreclosure sale" as those terms are used within the regulation. The CFPB's official interpretation of the regulation allows a servicer to proceed with an already-pending foreclosure process so long as the steps taken, including issuing required publications, do not result in the issuance of a foreclosure judgment or the conduct of a foreclosure sale. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696-01, at 10897–98 (Feb. 14, 2013). The Tripicchios offer no authority to support their assertion that the notice of sale was all that was needed to bring about a foreclosure sale.

Moreover, as previously discussed, the evidence attached to the complaint shows that the Tripicchios failed to perform under the TPP. Thus, Seterus was not prohibited from proceeding with the foreclosure sale in light of section 1024.41(g)(3).

*Illinois Consumer Fraud Act*

Count IV of the Tripicchios' complaint alleges that Seterus violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., ("ICFA") by proceeding with foreclosure proceedings after approving the Tripicchios for a trial payment plan and accepting their payments under the plan. To state a claim under ICFA, a plaintiff must allege 1) a deceptive or

unfair act or practice by the defendant; 2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; 3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; 4) actual damage to the plaintiff; and 5) that the damage was proximately caused by the deception. *David v. Bayview Loan Servicing, LLC*, No. 15-cv-9274, 2016 U.S. Dist. LEXIS 57100, at *16 (N.D. Ill. Apr. 29, 2016). (Dow.J.); *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 603, 395 Ill.App.3d 943 (2009)); *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 546, 368 Ill.App.3d 278 (2006). In order to determine whether a defendant's conduct is unfair under ICFA, courts consider whether the conduct violates public policy, is so oppressive that the consumer has little choice but to submit, or causes consumers substantial injury. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (*citing Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961, 201 Ill.2d 403 (2002)). All three criteria do not need to be satisfied to support a finding of unfairness; "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961.

The Tripicchios allege solely that Seterus used fraud, deception, or misrepresentation in its attempt to "wrongfully breach the New TPP". It is well established, however, that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm. Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 844, 216 Ill.2d 100 (2005); *see also Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 993, 311 IllApp.3d 308 (2000) ("We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract."). The Tripicchios have accordingly failed to state a claim under ICFA.[1]

---

[1] This Court additionally notes that the Tripicchios' allegations that they suffered emotional distress are incapable of giving rise to injuries actionable under ICFA. *Morris v. Harvey Cycle & Camper, Inc.,* 911 N.E.2d 1049, 1053, 392 Ill.App.3d 399 (2009) (recognizing that actual damages must be alleged in the form of specific economic injuries and that emotional damages therefore do not suffice). The Tripicchios have, however, adequately alleged the existence of actual

7

*FDCPA Claims*

The Tripicchios also allege that Codilis violated sections 1692d, 1692e, and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), which protects against abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. §1692 *et seq*. This Court addresses each section in turn.

Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Examples of such conduct include "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person," "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader," "[t]he publication of a list of consumers who allegedly refuse to pay debts," or "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.*

The Tripicchios allege that Codilis violated this section by employing unfair and unconscionable means to collect the subject debt. Although the Tripicchios do not identify what means Codilis used, this Court must assume that they reference the filing of the Notice of Sale. It is well established, however, that taking legal action to recover a debt does not, in and of itself, constitute harassment or deception. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (recognizing that the tactics forbidden by section 1692d are "not comparable to the single filing of a debt-collection lawsuit). Legal actions violate section 1692d only when they are frivolous, based on blatant lies, or misrepresent a key fact. *Eichman v. Mann Bracken, LLC,* 689 F. Supp. 2d 1094, 1100–01 (W.D. Wis. 2010). Although the Tripicchios challenge the propriety of sending the

---

harm because legal fees incurred in defending a separate proceeding can constitute actual damages under ICFA. *See Armbrister v. Pushpin Holdings,* LLC, 896 F.Supp.2d 746, 756 (2012).

8

Notice of Sale, they do not contend that the Notice of Sale was based on blatant lies or that it was frivolous. Accordingly, the Tripicchios have failed to state a claim for violation of section 1692d.

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representations in connection with the collection of any debt." 15 U.S.C. §1692e. The statute provides examples of such conduct, such as "[t]he false representation of the character, amount, or legal status of any debt," "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," or "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* The Tripicchios allege that Codilis violated this section by filing the Notice of Sale while they were enrolled in the TPP and while foreclosure was thus prohibited by section 1024.41(g). As this Court previously decided, however, the Tripicchios' allegations and the evidence attached to the complaint establish that the Tripicchios did not substantially comply with their obligations under the TPP. Accordingly, the Tripicchios' allegations do not establish that Codilis falsely represented the status of their debt or threatened to take unavailable legal actions.

Section 1692f provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. Examples of such conduct include communicating with a consumer regarding a debt by post card, taking nonjudicial action to effect dispossession, depositing a postdated check prior to the date on the check, or collecting unauthorized fees. The Tripicchios allege that Codilis violated this section by using unconscionable means to collect a debt by sending the Notice of Sale. As previously noted, however, the allegations and evidence attached to the complaint do not support the assertion that Codilis acted wrongfully when it sent notice of sale. Moreover, the Tripicchios' section 1692f claim is premised on the same factual allegations as their section 1692e claim, and therefore fails to state an independent basis on which relief may be granted. *See Heffron v. Green Tree Servicing, LLC,* No. X, 2016 WL 47915, at *5

(N.D. Ill. Jan. 5, 2016) (recognizing that a section 1692f violation cannot be premised on an alleged section 1692e violation). Accordingly, the Tripicchios have failed to state a claim for violations of 15 U.S.C. §1692

**Conclusion**

For the reasons stated herein, Seterus' motion to dismiss [17] and Codilis' motion to dismiss [8] are granted and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: December 20, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge